a minor. People be Christopher. Case numbers 4 1 7 0 4 1 0 4 1 7 0 4 1 1 and 4 1 7 0 4 1 0 4 1 2 for the appellant Jessica Marduly and for the Apple David mansion. You may proceed. Smartness. Good morning, Justices Council. Hey, please. The court. My name is Jessica Marduly, counsel for appellant Krista Glover, mother to Noah, who's now 10, Allison, 8, and Madison, who's now 5. She's the wife of Chad Glover, who was a respondent at the trial court, but is not a party to this appeal. This case, simply put, is about the allegations filed by the state and whether the state met its burden. It's not about the trial court's interpretation of what this case is about or its take on how the arguments should have been framed. Ultimately, the trial court overtly failed to make a finding on a major aspect of the pleadings. And in doing so, admitted the state did not prove its case. The unresolved question is, when was Chad Glover indicated? And when was Krista notified about that finding? So a quick overview of the pleadings. And at the outset, I want to acknowledge that I'm not arguing that the pleadings were insufficient. Instead, I'm arguing that the state failed to meet its burden. Only counts one in three of the petitions were argued at the trial court. In the first count, it's alleged that the minors environment was injurious because Krista was notified that Chad can't have unsupervised contact with her children. And the keywords here are based on his DCF indicated finding. And she allowed that unsupervised access. In the third count, it's alleged that the minors are at substantial risk of being abused because Krista allowed Chad to have unsupervised access to her children. Again, the keywords here are after being notified by DCFS that her husband is indicated. Not that he will be indicated or that the investigator is recommending an investigation or an indication. So not one, but both of the allegations direct parties to look to Krista's actions after the indicated finding. So, for example, if the children were removed before an indicated finding was entered, it is straightforward that the state failed to meet its burden. Skipping forward then to the order in this case, the court issued a written order and delivered a lengthy explanation of her order from the bench. We see in the written order, which is found in the common law record on 122, where the court states DCFS has either indicated the report or was in the process of indicating the report. And then when delivering her decision from the bench, the trial judge stated on page 176 of the record, to me the issue wasn't when the report was indicated. To me the issue was when did the parents have knowledge that they should be taking some sort of action with regard to their children. That was not the issue presented to her. She specifically did not rule on that timing issue. So who cares. You might be wondering why the timing of the indicated finding was entered, or excuse me, when the indicated finding was entered is important since the trial court did not deem that issue to be important. The court found there was sufficient evidence to find Chad was around the children unsupervised. And that amounted to neglect. However, a ruling on this issue is not only important because of the manner in which the allegations were drafted in the pleadings, but it's also important because what Krista knew when is tied to what is expected of her to keep her children safe and in her care. Due to the nature of due process for an indication as compared to criminal charges, charges which were still pending at that time, it's just as much Krista's right to believe that her husband is innocent of those charges as it is for Chad to be presumed innocent until proven guilty. Well, wouldn't that be an argument that charges like this could be brought against him. It doesn't matter until he's been tried and convicted as far as whether she needs to keep these children away from him. Are you asking if the trial court should have waited until the criminal process? No, I'm asking with regard to the parent, with regard to what you're talking about here and Krista. The argument that you just made sounded like, well, hell, he could have been charged, but he's not convicted of anything. I don't have to take any steps to keep these kids away from him. Well, I think her actions contradict that she did try to keep these kids safe. She was cooperative with the agency throughout the process, but I would also suggest... Mr. Chair, you seem to be arguing earlier that until such time as he's actually been tried and convicted, the mere bringing of charges against him don't matter as far as whether or not the parent of these children should be concerned that Chad has existed. I'm arguing that the state alleged in its pleadings that we're to look at what happened after the finding was indicated. So while, yes, the charges are still ongoing, in this case, at the trial court, there was a lot of time spent... So what if the pleading just said, Krista knew that this guy was involved in sexual assaults of children, and should have kept them away from the children? And that would have been enough? I believe that would change what the state has asked to prove. Well, I'm just, you know, I handle a lot of juvenile court stuff in my time, and the notion that these pleadings, this sounds like a bill of particulars, that having brought this claim, by God, that's it, you can't deviate from it, the timing is a key factor in it, and if the state alleged these particulars, then that's it. The pleading limits them. I don't know of any case law that says that. Especially if, and correct me if I'm wrong on this, especially if at trial the argument wasn't made, maybe it was here, but I don't recall it, Wait a second, Judge, the state is deviating from what they allege, and I'm surprised. Is that argument made? I specifically recall in the opening arguments of, I don't remember which counsel, if it was Mom's counsel or Dad's counsel, and maybe both, that the court had to focus on the timing, that the timing was important, and it was important to look at the indicated finding. And the judge does address the issue in her order. Now, that's an opening statement. The state presented evidence where you're now claiming this, the timing maybe wasn't consistent with the pleadings. Isn't that what you're essentially arguing? That is. Okay. At that point, after the state has rested, arguing to the trial judge, hey, Judge, the state loses because this timing element wasn't present any longer. Was that argument ever made? Specifically, I can't recall if that argument was directly made in that clear of a fashion, but I do believe the argument was made based on evidence that was presented. For example, the letter that was presented to Mr. Glover in December, letting him know that an indicated finding had been entered in December. Well, two things. One, this is a civil proceeding. So that means the pleadings, unless we're talking about a bill of particulars, don't limit the parties to what the evidence might be, even limit the parties to relevancy. But the second thing is, given that we're concerned about the best interests of children, and it's not a good idea to have child sex offenders around or accessible to young kids, why is the timing all that critical? Why is it enough to say, wait a minute, Krista, you knew this guy was being charged, being investigated. That shouldn't be enough until you know that there's nothing to the charge to keep the kids away from, or tell them to get out of this house. Why wouldn't it work that way? Well, I think part of the reason why knowing when the indicated finding is entered is important is because of some of the things that the letter indicates, such as appeal rights. If they were to pursue, so if you believe you're innocent, you're able to pursue an appeal at the agency level. But they didn't receive that until the end of December. There's a four-month gap here from when they say the investigation is closed. So if Krista's told, we think your husband's been involved in sexual abuse of children, but he doesn't get a letter until three weeks later, what she was told doesn't count? I don't know that it's fair to say that it doesn't count, but I do think it needs to be addressed, and I do think the pleading should have been clear as to what was expected. Then we're back to the pleadings. Yes. Okay. But I'm just meaning, as a matter of fact, if Krista knows this is the mother of these young children, isn't that enough to alert her that this might be an environment injurious to your children if you let this guy hang around? And I believe, as a matter of fact, she took steps in order to ensure that her children were in supervised settings with Chad. There was testimony presented that would concede on both sides of that issue, whether there was some breaches in that safety protocol measure that was taken, and the trial court opted to choose the credibility of some over that of my client. But I would suggest that she did take very serious measures to keep the children safe. And I don't know if – Well, he was living there at night. Wasn't that what the evidence was? They are married, yes. Well, okay, they are married, but at what point wasn't she told, Krista, get this guy out of your house or your kids, one or the other? You can't have both. Yes, I believe that is something that she was told, and I believe the evidence showed that she did take a lot of those – a lot of measures to ensure that, one, he was kicked out. He did move out when that statement was made. But because there wasn't agency involvement, what we have is testimony from children and the appellant as to what happened during that time. But not a lot of hard evidence to suggest what was happening one way or the other, especially – Well, that's why we have trial judges get the big bucks. The trial judge heard this and said, this is what I find based on what I heard. Isn't that right? Yes. Any reason that we shouldn't accept those findings? However, I think that without a criminal process proceeding, without evidence being heard at the agency level on whether these allegations are true, we don't know what was going on. The trial judge didn't know what was going on as to what brought this stuff – excuse me, these issues because there was no opportunity to appeal at the agency level. So they're maintaining that there isn't a problem. They, Krista and Chad, are maintaining there isn't a problem and didn't have an opportunity to speak for themselves. I'm taking a lot of your time. I apologize. I want to give you an opportunity to continue with the rest of your argument. I maintain that the fact that there was a discrepancy is troubling because of the importance of having children in homes. So, right or wrong, when an investigator comes in and takes protective custody of a child, that's a serious charge, both on the investigator's part and on the parent's part. Investigators have a lot of power in that sense. There's basically a unilateral determination that an individual – But Britton was the investigator, right? Correct. And Britton told your client towards the end of August 2015 that Chad would be indicated, correct? Would be indicated, correct. And he was indicated on August 28, 2015, correct? I believe that's arguable. I believe that we don't know that there was an indicated finding, especially given that that letter wasn't sent until December, that notifies them of the indicated finding and their appeal rights with the timeline that that appeal needs to be made, I don't recall specifically, but within 30 or 60 days. So, without something entered on August 28 in their system, the state can present any evidence that suggested that a finding was entered on August 28. Well, isn't there evidence in the record to show that Chad stayed overnight after your client was told that he would be indicated? My client has made clear through her testimony that he didn't. He was always in a supervised scenario, and she testified that sleeping overnight would indicate that he was unsupervised. So that's her testimony, and I acknowledge that there is counter-testimony to that. From the children, in specific? Correct. Okay. But I would like to add that it was part of Krista's testimony that it was, she felt it was her role to keep the children as unaware of the issue as possible. So she did try to ensure that the children, that Chad was around at night after school to help with homework and dishes, and putting them to bed, again, always supervised. And then in the morning, it was her testimony that, excuse me, that the children were told that he had work responsibilities, so he wasn't around in the morning. That's what they were told. It was her effort to keep them as unaware as possible. They're quite young. If they're 10 now, they would have been, the oldest would have been 8 then. So what the children knew was largely driven by mom, is her testimony. So, again, because of the gravity of the weight of the ability of investigators to remove children from a home, and for investigators to be able to place individuals on the state central register for 50 years, I believe it's extraordinarily important that process is followed, and that process is followed to a T. The second investigator in December received this case on December 18, and over the course of one day, looked into the matter and took protective custody on the same day. This isn't in the record, I'm speculating, but it's possible that she went into the computer and saw there wasn't an indicated finding entered from that July investigation, which prompted the later letter. It's possible that's not in the record. So I do believe that we are looking at two different dates, and I do believe it's important that what mom knew when, if she is to believe that her husband is innocent, she is taking those extra precautions. But she didn't know that she was absolutely obligated to keep this man away from her children. There was a roommate also in the home, so it wasn't solely on her. For example, Krista would be able to, she testified that she didn't take a shower while he was in the home, but she could have, or use the restroom. There was another adult in the house in order to make sure these children remained safe. But also throughout the investigators' efforts, nobody was questioning that the children experienced positive interactions with Chad. Only positive interactions were observed. Nobody suspected that the children were being abused at any point. There were several contacts between that first investigator. She started investigating this case on July 1st. She committed to being there every, at their home every week. It didn't happen every week. I believe even after the first instance, a respondent had to call BCFS to say, where are you? I expected you several days ago. You've not shown up. But an investigator was showing up from July 1st through the end of August, approximately every week, without any suspicion of abuse to the children by her own testimony. The kids testified about being in a loving relationship, about the things they liked doing with their dad and with Krista. They loved their mother. They loved Chad. And they enjoyed doing things together. Eyes were on Chad when he was around to help with the cooking and cleaning, and to help with the homework, and to get the kids ready for bed. Eyes were on Chad whenever he was interacting with the kids. She believed that she was fully cooperating with DCFS. She was doing everything that DCFS asked her to do. She believed that her children were safe. She believed that her children were never in any amount of harm. She did what she believed to be in their best interests. Back to the written notification. There was testimony provided by a DCFS administrator in this case, that written notification of an indicated finding provides that recipient's notice   and reveals the outcome of that investigation. The written notification is automatically generated once the investigator concludes the investigation. So I'm not suggesting that the notification substitutes for the indicated finding, just that that's when the indicated finding was actually entered. And I do maintain that the pleadings is what should be the benchmark for what the state is tasked to prove. They did not prove that Krista knew anything, that Krista knew that the indicated finding had been entered in August. They failed to meet that burden. And the courts directly tacitly implied that the court failed to meet that burden when she directly did not rule on that issue. Appellant respectfully requests this court enter in order reversing the trial court or remanding the case to address the issues raised. Thank you. You'll have rebuttal if you want it. Mr. Manchin, please proceed. May it please the court, counsel. In this case, the defendant, the respondent, is basically saying that until she had written notice of an indicated finding, she could not be found to have neglected her children by allowing access by a suspected sex offender. I think, Justice Feigin, you have it correct that the exact language of the allegations of the petition do not have to be proved, but that if they prove that she allowed access to a known or suspected sex offender, that that is sufficient in and of itself without respect to this language regarding the indicated finding. Would that require an amendment to the pleadings? That's an amendment that could be made at any time. There's no objection to the pleadings. There's no complaint made by the respondents below that the state was varying from the allegations. All they argued was that until they got written notice, there was no indicated finding. That's the exact basic argument here. What's the state's position on the date of the indicated finding? I believe it was August 21st that Britain testified that the indicated finding was made on August 21st, and the case was closed at that time. On August 21st, she spoke with the respondent personally and told her, the defendant shall not have any access to the children, shall not be in the home, shall not have any, there's no unsupervised. At that time, on August 21st, she told her no contact whatsoever, and that if there was any contact whatsoever, the children would be removed from the home. A week later, apparently was notified that, yes, he can have supervised contact with the children, but that he should not be in the home overnight. This is consistent with everything since July 1, where the defendant agreed to safety plans. Each safety plan stated, respondent Chad is accused or suspected of child sexual abuse. I don't remember the exact language, but the language of that nature was in each plan. Each plan said no unsupervised contact. The first one specifically said no overnight stays. The other ones, the respondent was told, although the language of the agreed orders was different, the plan was no overnight stays. So as of July 1, respondent knew that her husband was being accused of sexual abuse of a child. She agreed to various safety plans that said no unsupervised contact and no overnight stays. To say that she was somehow sandbagged when this letter arrived after the children were removed is just simply not supported by the record. She knew as of July 1 that this sex charge was hanging over her husband's head and agreed that for the protection of the children, there should be no unsupervised contact. Come the adjudicatory hearing, the trial court is presented with conflicting evidence. There was evidence that she was making efforts to comply and protect her children, but there was also other evidence, specifically testimony from the children, that the respondent father was in fact in the home overnight from October through December of 2015. Respondent, in a conversation with an investigator, admitted that there were occasions when the respondent father would be in the home overnight when they had the same work schedule in the mornings. Then you have the respondent's testimony saying no, he was never there unsupervised. He was never there overnight. So the trial court was faced with a credibility determination. Was there overnight contact and was there any unsupervised contact?  and the investigator were more credible than the respondent regarding her denials of any unsupervised conduct. There's no basis upon which this court can substitute his judgment on that credibility question. The evidence here was that from July through August, there was an agreed upon order for safety of the children that there be no unsupervised contact and no overnight stays. The evidence showed that that was violated. The trial court was correct in finding that that created a crisis to the children. As far as the date of the adjudication, the letter notifying them is not the date of the adjudication. The statute says when an indicated finding has been made, the parent should be given notice of this in writing. That means that the indicating finding has been made before any letter is issued. And in this case, the evidence was clear that that indicated finding was made in August and that that information was provided to the respondent personally, along with a strict admonition that if you allow unsupervised access to the children, the children will be removed. There can be no clear notice to the respondent of the risk that they were trying to prevent when there were four different plans, each saying no unsupervised contact, and constant conversations in which you cannot let him be in the house overnight because that means there's unsupervised contact. To what extent should we be concerned that the actual petition filed by the state in this case might have misled the respondent in thinking what she needed to defend? I don't think it does because the evidence was clear that she knew by her own admission that her husband was not to have any contact. The phraseology of based upon an indicated contact or indicated finding by the DCFS could not have misled her as to what she had to do. What it gave her was a hook to hang her, a defense, so to speak, saying, hey, I was never given written notice of anything, so therefore I'm not required to do anything until I receive that written notice, rather than confusing her. I think Mr. Ardugo would argue that until the letter in December is sent out, it's really not an official indicated finding. Is there any merit to that? No, because the statute just says that when an indicating finding is made, the parent shall be given notice of that. The notice is not the finding. It's just simply a formal way of giving the respondent's notice or knowledge that the indicated finding was made. Here we have the respondent in person being told, and we have the respondent also knowing that a criminal indictment had been issued against the respondent father, being specifically told in August that there should be no unsupervised contract and no overnight stays. Is it a common practice for DCFS to decide there will be an indicated finding or is an indicated finding, and then not send out a written notice until four months later? There is no testimony presented below regarding how fast or why the notice did not come out sooner in this particular case. I'm sure that there are cases where the day after the indicated finding, the letter will come out. There are probably other cases like this where the That would seem like a better practice. Yeah, that would be the better practice. But given the administrative problems DCFS is known for, this type of notice problem is probably not that unusual. But given the fact that the indicated finding that is in issue here is an indicated finding that the respondent, Chad, presents a risk to the children because he is a suspected child sex offender. That's the basis of the indicated finding. For a month prior to that, respondent had been given written notices in agreed-upon safety plans that said, no contact unless it's supervised, and this is because he's suspected of being a child sexual abuser. This is not a case of lack of notice or lack of knowledge on the part of the respondent as to what she was required to do. She testified that she knew what she was required to do, which was no contact unless supervised. She also testified that she complied fully with that. Ultimately, the trial court did not believe that testimony but believed the testimony of the children that there was contact, that he was left alone with them as a babysitter. I believe Allison testified that he would actually give her baths and that there would be nobody else in the room with him. And the trial court believed that testimony over that of the respondent. I think that the trial court's finding of neglect in this case was correct. Regardless of any inexactitude or errors in the use of language, if the language in the initial petition left out as based upon the indicated finding which just said that the respondent had failed to follow safety plans that had been established, we'd be in the same position we are now with a clear indication that there is a risk that is not being fully ameliorated and that neglect finding was justified. Are there no further questions? I see none. Thank you for your argument. Is there any rebuttal? Yes. Okay. I probably would suggest that those problems are excused because DCFS is overworked and underfunded. That can't be acceptable. These are people's lives, and that letter is automatically generated. So if something happened where there would be a four-month gap, it's unclear. He's right. There was no testimony explaining why there was four months in between when this letter was generated. But again, knowing when the finding was indicated is important. Investigator Britton is only able to make a recommendation about an indication. She told Ms. Glover that when they were together on the 21st, she said would be. It was her testimony, but she could only make a recommendation. Staffing would then need to occur in order for that decision to be made. Further, safety plans are only in effect for one week. Each of the safety plans that was entered says near the bottom of that plan that this is to be renewed in one week. On August 28th, one week after the 21st, there is testimony about a voicemail from an investigator on Ms. Glover's phone. Krista testified that she responded, attempted to respond to DCFS, but she left a message and never received a phone call back. So between would be indicated, between a one-week safety plan, it's very probable that she believed that over time, after not hearing from the agency, not hearing from the agency, that the investigation was closed without an indicated finding. I don't think that's improbable. Ultimately, this is an unresolved question of fact that needs to be decided by the trial court. So at the very least, it would be our position that this case should be remanded for that decision to be made. Thank you. Unless there's any questions, I conclude. Okay. Thanks to both of you. The case is submitted in the course of recess.